UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN O. DESMOND, Chapter 7 Trustee in Bankruptcy for William C. Martin, Elizabeth Martin, and In-Island Development, LLC, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 15-11155-MGM |
| JENNY NG, individually and D/B/A Network Group and D/B/A Primesite Business Brokers, | * * * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S RENEWED MOTION TO WITHDRAW
REFERENCE TO THE BANKRUPTCY COURT
(Dkt. No. 1)

October 8, 2015

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

John O. Desmond ("Plaintiff" or "Trustee"), in his capacity as the Chapter 7 Trustee for

debtors William C. Martin, Elizabeth Martin, and In-Island Development, LLC ("In-Island"),

brought this adversary proceeding against Jenny Ng, individually and doing business as Network

Group and Primesite Business Brokers ("Defendant"), seeking damages as well as declaratory relief

on behalf of the bankruptcy estate. Presently before the court is Defendant's renewed motion to

withdraw the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). (Dkt. No. 1.)

Defendant primarily argues the reference should be withdrawn because she has a constitutional right

to a jury trial in District Court. For the following reasons, the court will grant Defendant's motion.

## II.    BACKGROUND

On September 14, 2012, William Martin and Elizabeth Martin filed a voluntary petition for

bankruptcy pursuant to Chapter 7 of the United States Bankruptcy Code. (*In re William C. Martin and*

*Elizabeth A. Martin*, Case No. 12-17514 ("*In re Martin*"), Dkt. No. 1.)[1] On January 30, 2013, the Bankruptcy Court granted the Trustee's motion to substantively consolidate In-Island with William and Elizabeth Martin as debtors in the bankruptcy case.[2] (*Id.*, Dkt. No. 123.)

According to the Trustee's complaint in the adversary proceeding, the bankruptcy largely arose from a failed real estate development in which William Martin sought to convert a former nursing home at 437 Nokomis South Avenue, Venice, Florida ("Florida Property"), into a 26-unit condominium ("In-Island Project"). (*Desmond v. Ng*, Case No. 13-01348 ("Adversary Proceeding"), Dkt. No. 1 ("Compl.").) On February 17, 2005, In-Island took title to the Florida Property for $1,800,000.  (*Id.*, Compl. ¶ 27.) The purchase price was partially funded by a $1,200,000 loan ("Loan") from People's Federal Savings Bank to William Martin and Defendant, individually and in her capacity as trustee of the Smith Realty Trust and the Shepard Realty Trust. (*Id.*, Compl. ¶¶ 29-30.) The Loan was secured by the Florida Property and two parcels of real estate owned by Defendant in trust and of which she was the sole trustee: 555 Bridge Street, Weymouth, Massachusetts, and 18 Shepard Street, Brighton, Massachusetts ("Trust Properties"). (*Id.*, Compl. ¶ 31.) Despite outside investments of approximately $2,700,000, the In-Island Project never proceeded beyond the initial permitting phase and, by August of 2008, all of the In-Island funds had been depleted. (*Id.*, Compl. ¶¶ 36, 41, 43.) In 2010, People's Federal Savings Bank foreclosed on the Florida Property and applied the net proceeds to the balance due on the Loan. (*Id.*, Compl. ¶ 45.) In addition, as a result of the In-Island Project's failure, Defendant sold the Trust Properties and paid People's Federal Savings Bank the proceeds in exchange for a release of her indebtedness for the balance of the Loan deficiency. (*Id.*, Compl. ¶ 46.)

---

[1] On September 17, 2012, Joseph Braunstein was appointed as the Chapter 7 trustee. (*Id.*, Dkt. No. 8.) On October 1, 2013, following Mr. Braunstein's death, Plaintiff was appointed as the successor trustee. (*Id.*, Dkt. No. 171.) The court will refer to each as "Trustee" during the time they served in that capacity.

[2] In the motion, the Trustee asserted William Martin was the sole member and manager of In-Island. (*Id.*, Dkt. No. 102.)

On December 5, 2012, Defendant filed a proof of claim as a creditor in *In re Martin*,
asserting that William Martin owed her $1,650,000 based on a "[w]ritten agreement of guarantee and
payments" ("Agreement") in which William Martin allegedly agreed to cover any losses regarding the
Trust Properties Defendant pledged as collateral for the Loan from People's Federal Savings Bank
for the purchase of the Florida Property. (Dkt. No. 3, Trustee's Opp'n to Def.'s Renewed Mot. to
Withdraw Reference, Ex. A.) The Agreement, which Defendant attached to her proof of claim,
specifically provides:

> It is hereby agreed that should Jenny W. Y. Ng's equity value in the properties known
> as and numbered 18 Shepard Street, Brighton, and 555 Bridge Street, Weymouth,
> diminishes [sic] due to the security by Peoples' Federal Savings for the real estate at
> 437 Nokomis Avenue, Venice Island, Florida, William C. Martin shall make up said
> diminish [sic] by the sale of his personal assets.

(*Id.*)

On August 27, 2013, the Trustee initiated the Adversary Proceeding against Defendant.
(Adversary Proceeding, Compl.) The complaint alleges that, before the In-Island Project, William
Martin and Defendant had previously worked together on various business ventures, with
Defendant often handling the finances and business operations. (*Id.*, Compl. ¶¶ 8-20.) In particular,
Defendant had access to and signatory authority over William Martin's personal bank accounts and
the accounts for his various business entities. (*Id.*, Compl. ¶ 11.) She wrote checks for William
Martin's businesses, managed his employees' work schedules, and assisted his accountants in
preparing tax returns, among other roles. (*Id.*, Compl. ¶¶ 13-17, 19.) Defendant played a similar role
regarding the In-Island Project, depositing investments and issuing checks. (*Id.*, Compl. ¶¶ 37-39.)
The complaint alleges that Defendant transferred over $1,365,000 of In-Island funds into accounts
she owned or controlled, including accounts in the names of Primesite Business Brokers and/or
Network Group (entities she was doing business as). (*Id.*, Compl. ¶¶ 40, 49.) The complaint asserts
claims against Defendant for: Accounting (Count I), a Declaration that Martin and Defendant were

Partners or De Facto Partners (Count II), a Declaration that Martin and Defendant were Partners by Estoppel (Count III), a Declaration that Martin and Defendant were Joint Venturers with regard to In-Island (Count IV), Breach of Contract (Count V), Breach of Fiduciary Duty (Count VI), Conversion (Count VII), Breach of Express and Implied Trust (Count VIII), Breach of Constructive Trust (Count IX), Unjust Enrichment (Count X), and Money Had and Received (Count XI).[3]

On October 3, 2013, in the Adversary Proceeding, Defendant filed an answer and demand for a jury trial, as well as an initial motion to withdraw the reference to the Bankruptcy Court. (Adversary Proceeding, Dkt. Nos. 11, 12.) Meanwhile, on October 22, 2013, in *In re Martin*, the Trustee filed an objection to Defendant's proof of claim. (*In re Martin*, Dkt. No. 177.)[4] On April 28, 2014, District Judge George O'Toole denied Defendant's initial motion to withdraw the reference "without prejudice to renewal when, and if, the adversary proceeding is ready for trial." (*Desmond v. Ng*, 13-cv-13005-GAO, Dkt. No. 12; Adversary Proceeding, Dkt. No. 23.) Thereafter, the Bankruptcy Court issued a scheduling order in the Adversary Proceeding, the parties completed discovery, and a trial date of April 1, 2015 was scheduled.  (Adversary Proceeding, Dkt. Nos. 27, 38.) In addition, an evidentiary hearing on the Trustee's objection to Defendant's proof of claim in *In re Martin* was also scheduled for April 1, 2015. (*In re Martin*, Dkt. No. 228.) On March 9, 2015, Defendant filed in the Adversary Proceeding the instant renewed motion to withdraw the reference,

---

[3] Defendant, for her part, asserts she acted as a bookkeeper for William Martin and paid bills for him for the In-Island Project and his other business activities. (Dkt. No. 2, Def.'s Mem. in Supp. of Renewed Mot. to Withdraw Reference at 3-4.) Defendant also asserts she paid bills for the In-Island Project out of her own money in excess of amounts she received, she accommodated William Martin by putting the Trust Properties up as collateral for the Loan, and all the In-Island Project assets can be accounted for and were used for the project. (*Id.*)

[4] As grounds for the objection, the Trustee argued: the Agreement limits William Martin's liability to his "personal assets," of which he had none as of the bankruptcy filing; the Agreement lacked consideration; the promissory note given to People's Federal Savings Bank for the Loan provided that Defendant would be jointly and severally liable with William Martin; Defendant's proof of claim provided insufficient basis for the amount sought; and, to the extent Defendant's claim is valid, it would be subject to a set-off due to the claims asserted by the Trustee in the Adversary Proceeding. (*Id.*)

which motion was transmitted to this court on March 24, 2015.[5] (Adversary Proceeding, Dkt. Nos. 40, 43.)

### III.   ANALYSIS

Federal district courts have original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to title 11" of the Bankruptcy Code. 28 U.S.C. § 1334(b); *see In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 68 (1st Cir. 2002) (explaining meaning of "arising under," "arising in," and "related to" for purposes of 28 U.S.C. § 1334). Under 28 U.S.C. § 157(a), district courts may refer such cases to bankruptcy court, and in this District, pursuant to Local Rule 201, they are automatically referred there. However, under 28 U.S.C. § 157(d), a "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Although bankruptcy courts may conduct jury trials "if specially designated to exercise such jurisdiction" and if the parties expressly consent, 28 U.S.C. § 157(e), Defendant has not consented to the Bankruptcy Court conducting a jury trial. Accordingly, as the Adversary Proceeding is now ready for trial, the reference should be withdrawn if Defendant is entitled to a jury trial so it can be held in the District Court. *See In re Wolverine, Proctor & Schwartz, LLC*, 404 B.R. 1, 2 (D. Mass. 2009) ("Cause to withdraw exists where a party has a right to a jury trial and does not consent to having that trial in the bankruptcy court.").

Defendant asserts the court should withdraw the reference to the Bankruptcy Court because she has a Seventh Amendment right to a jury trial. In particular, Defendant argues many of the Trustee's claims or the remedies sought are legal in nature, rather than equitable, and thus carry a right to a jury trial. Defendant also argues that because the legal and equitable claims involve common facts, she has a right to a jury trial on all of the Trustee's claims. Moreover, Defendant

---

[5] In light of Defendant's motion, the Bankruptcy Court has postponed both the trial in the Adversary Proceeding and the evidentiary hearing on the Trustee's objection to Defendant's proof of claim in *In re Martin*. (Adversary Proceeding, Dkt. No. 44; *In re Martin*, Dkt. No. 229.)

contends, she has not waived her right to a jury trial by filing the proof of claim in *In re Martin* because the Trustee's claims against her are much broader, and ruling on the proof of claim would not dispose of the Trustee's claims in the Adversary Proceeding.[6] In response, the Trustee argues Defendant has waived any jury trial rights by filing the proof of claim because the Adversary Proceeding bears directly on the allowance of Defendant's claim against the estate. The Trustee also argues the claims asserted in the Adversary Proceeding are equitable claims "for a determinate sum of money," for which no jury trial right exists.

The court will first address whether Defendant in effect waived the right to a jury trial by filing the proof of claim in the underlying bankruptcy case. Then, it will determine whether the Seventh Amendment affords Defendant a right to a jury trial on the Trustee's claims.

A.    Effect of Filing Proof of Claim

Prior to the Supreme Court's decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), some courts held that a creditor who filed a proof of claim in bankruptcy court against the estate waived or otherwise lost the right to a jury trial not just on that claim, but also on any unrelated claims brought by the trustee against the creditor. *See, e.g.*, *Container Recycling All. v. Lassman*, 359 B.R. 358, 361 (D. Mass. 2007) ("[I]f a creditor files a claim against the estate, it loses any right to insist on a jury, not only as to its claim, but also as to claims by the trustee against it . . . ."); *see also In re LLS Am., LLC*, 2012 WL 11860945, at *5-6 (Bankr. E.D. Wash. July 2, 2012) (comparing waiver rules before and after *Stern*). In *Stern*, however, the Supreme Court clarified its prior decisions and explained that such a waiver does not occur unless the process of ruling on the creditor's proof of claim would

---

[6] Defendant also argues the reference should be withdrawn because the Trustee's claims either are not "core" under 28 U.S.C. § 157(b) or, pursuant to *Stern v. Marshall*, 131 S.Ct. 2594 (2011), exceed a bankruptcy court's constitutional authority in light of Article III of the Constitution. Because the court agrees with Defendant that she is entitled to a jury trial and thus will withdraw the reference on that ground, it need not address these issues. The court notes, however, that bankruptcy courts in this District should decide these issues in the first instance. *See* 28 U.S.C. § 157(b)(3); Local Rule 206. Moreover, even if a bankruptcy court lacks constitutional authority under *Stern* to enter final judgment, it may, in the absence of a jury trial right, submit proposed findings of fact and conclusions of law to the District Court for *de novo* review. *See* 28 U.S.C. § 157(c)(1); Local Rule 206.

necessarily dispose of the trustee's claim. *Stern*, 131 S.Ct. at 2616-18. If "the process of adjudicating [the creditor's] proof of claim would necessarily resolve" the trustee's claim against the creditor, then the trustee's claim becomes "'part of the claims-allowance process' subject to resolution by the bankruptcy court." *Id.* at 2617 (quoting *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990)); *see also id.* at 2616 (explaining that the Court in *Katchen v. Landy*, 382 U.S. 323, 329-30, 332-33 & n.9 (1966), "concluded that summary adjudication in bankruptcy was appropriate, because it was not possible for the referee to rule on the creditor's proof of claim without first resolving the voidable preference" claim brought by the trustee against the creditor). If, on the other hand, there are some "factual" or "legal determinations" regarding the trustee's claim "not 'disposed of in passing on objections' to" the creditor's proof of claim, then the creditor does not lose her jury trial right as to the trustee's claim merely by filing the proof of claim against the estate. *Id.* at 2617 (quoting *Katchen*, 382 U.S. at 332 n.9).[7]

Here, the court concludes, the situation falls into the latter category. That is, adjudicating Defendant's proof of claim would not necessarily resolve the Trustee's claims in the Adversary Proceeding. Defendant's proof of claim concerns a relatively discrete side agreement whereby William Martin allegedly agreed to cover any losses to the equity value of the Trust Properties pledged as collateral for the Loan which partially funded the purchase of the Florida Property. The

---

[7] Although *Stern* did not explicitly involve jury trial rights but, instead, addressed a bankruptcy court's constitutional authority, in light of Article III, to enter final judgment on certain claims, the Court construed its prior decisions, namely, *Langenkamp*, 498 U.S. 42, and *Katchen*, 382 U.S. 323, as well as *Granfinanciera v. Nordberg*, 492 U.S. 33 (1989), all of which dealt with the jury trial issue, in ruling on the Article III issue. *Stern*, 131 S.Ct. at 2616-18; *see also id.* at 2628 (Breyer, J., dissenting) ("As we have recognized, the jury trial question and the Article III question are highly analogous" (citing *Granfinanciera*, 492 U.S. at 52-53)); *Granfinanciera*, 492 U.S. at 53 ("[T]he question whether the Seventh Amendment permits Congress to assign its adjudication to a tribunal that does not employ juries as factfinders requires the same answer as the question whether Article III allows Congress to assign adjudication of that cause of action to a non-Article III tribunal."); *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 563 (9th Cir. 2012) ("*Stern* fully equated litigants' Seventh Amendment right to a jury trial in federal bankruptcy proceedings with their right to proceed before an Article III judge."), *aff'd sub nom. Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165 (2014). Accordingly, *Stern*'s discussion of the waiver issue is fully applicable here. As discussed in footnote 10, *infra*, this waiver doctrine has also been described as implicating a "public rights exception" to the general rule that, absent consent, only Article III courts, with their attendant jury trial rights, may exercise judicial power by entering final judgment. *See Stern*, 131 S.Ct. at 2618.

Trustee's claims in the Adversary Proceeding, on the other hand, implicate a wide range of factual and legal issues regarding the parties' relationship as to the In-Island Project in general and an alleged wrongful conversion of $1,365,000 in In-Island funds by Defendant.

Granted, just as in *Stern*, there is "some overlap between" the Trustee's claims and Defendant's proof of claim. *Id.* In that case, J. Howard's widow, Vickie (known publicly as Anna Nicole Smith), and one of Howard's sons, Pierce, were involved in vigorous disputes over Howard's fortune. *See id.* at 2601. The creditor, Pierce, filed a proof of claim in a bankruptcy proceeding alleging the debtor, Vickie, "defamed him by inducing her lawyers to tell members of the press that he had engaged in fraud to gain control of his father's assets." *Id.* Vickie filed her own claim in the bankruptcy proceeding against Pierce for tortious interference with the gift she expected from Howard. *Id.* The Court explained that the overlap between the two claims "was the question whether Pierce had in fact tortiously taken control of his father's estate in the manner alleged by Vickie in her counterclaim and described in the allegedly defamatory statements." *Id.* at 2617. "From the outset," the Court explained, "it was clear that, even assuming the Bankruptcy Court would (as it did) rule in Vickie's favor on that question, the court could not enter judgment for Vickie unless the court additionally ruled on" other questions, namely, "whether Texas recognized tortious interference with an expected gift as a valid cause of action, what the elements of that action were, and whether those elements were met in this case." *Id.* "There thus was never reason to believe that the process of ruling on Pierce's proof of claim would necessarily result in the resolution of Vickie's counterclaim." *Id.* at 2617-18. The same is true here. *Compare In re Aichinger*, 2015 WL 790536, at *2 (D. Colo. Feb. 23, 2015) (finding no waiver of jury trial right); *In re LLS Am., LLC*, 2012 WL 5285654, at *3 (E.D. Wash. Oct. 25, 2012) (same), *with In re Pulaski*, 475 B.R. 681, 686-869 (Bankr. W.D. Wisc. 2012) (explaining that the debtors' claim in an adversary proceeding, which

sought to invalidate a mortgage, would necessarily be resolved in passing on the creditor's proof of claim, which was allegedly secured by the mortgage).[8]

Accordingly, by filing the proof of claim against the bankruptcy estate, Defendant has not waived or otherwise lost any jury trial right she may have under the Seventh Amendment.

B.     Seventh Amendment Jury Trial Right

The Seventh Amendment provides: "In Suits at common law, where the value in the controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." The Seventh Amendment thus "encompasses 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Braunstein v. McCabe*, 571 F.3d 108, 117 (1st Cir. 2009) (quoting *Granfinanciera v. Nordberg*, 492 U.S. 33, 41 (1989)).

In determining whether the Seventh Amendment entitles a litigant to a jury trial, the First Circuit has directed courts to conduct the following analysis. "First, the court must 'compare the . . . action to 18th-century actions brought in the court of England prior to the merger of the courts of law and equity.'" *Id.* at 118 (quoting *Granfinanciera*, 492 U.S. at 42). "The Seventh Amendment 'applies to actions brought to enforce . . . rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century.'" *Id.* (quoting *Granfinanciera*, 492 U.S. at 42). "Second, the court must 'examine the remedy sought and determine whether it is legal or

---

[8] The Trustee's argument, in the objection to Defendant's proof of claim, that any recovery by Defendant would be subject to a set-off is not a basis for disallowing Defendant's claim; rather, it presupposes that Defendant's claim would be allowed. (*In re Martin*, Dkt. No. 177 ¶¶ 20-22.) Accordingly, a potential set-off does not result in the Trustee's claims becoming part of the claims-allowance process. *See Stern*, 131 S.Ct. at 2618 ("Congress may not bypass Article III [or the analogous Seventh Amendment jury trial right] simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."); *see also In re Lehman Bros. Holdings, Inc.*, 480 B.R. 179, 190 (S.D.N.Y. 2012) ("Plaintiffs argue that the issue of damages would inherently be resolved in the claims allowance process because an award of damages in Plaintiffs' favor will give Plaintiffs a right of setoff against [the defendant's] recovery from the Lehman estate. . . . However, the *Stern* Court specifically rejected such reasoning, finding that a defendant's status as a creditor—who had filed a proof of claim against the estate that was potentially subject to a common law counterclaim setoff—did not make the debtor's otherwise private rights counterclaim a public rights counterclaim.").

equitable in nature.' . . . This stage of the analysis is more important than the first stage." *Id.* (quoting *Granfinanciera*, 492 U.S. at 42).[9] Moreover, as the Trustee has asserted more than one claim, the court is also mindful of the Supreme Court's admonition that "[w]hen legal and equitable claims are joined in the same action, 'the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'" *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550 (1990) (quoting *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974)). Accordingly, "facts common to legal and equitable claims must be adjudicated by a jury," and "[t]he right to a trial by jury must be preserved even if the legal claims are characterized as incidental to the equitable claims." *In re Basile*, 472 B.R. 147, 152 (Bankr. D. Mass. 2012) (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 473 n.8 (1962) and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959)); *see also Marshak v. Tonetti*, 813 F.2d 13, 16-17 (1st Cir. 1987). "In such instances a court may not try the equitable claims first because to do so would subject the jury's findings to the principles of collateral estoppel." *In re Basile*, 472 B.R. at 152 (citing *Dairy Queen*, 369 U.S. at 479).

As to the first step of this analysis, it is clear that the Trustee's claims for breach of contract, money had and received, and conversion, at the least, are properly characterized as common-law claims which could have been decided in English law courts in the 18th century. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 569-70 (1990) (breach of contract);

---

[9] The First Circuit also noted a third step derived from *Granfinanciera*—whether the claim at issue is a private right or, rather, a public right that Congress may assign to be resolved by a non-Article III adjudicative body that does not employ a jury. *Id.* The First Circuit explained, however, that in light of 28 U.S.C. § 157(e), which authorizes bankruptcy courts to conduct jury trials in certain circumstances and which Congress enacted after *Granfinanciera* was decided, "many of the questions" this third step addresses have been "answer[ed]." *Id.* at 118 n.11. The First Circuit also indicated its approval of the Second Circuit's approach of applying *Granfinanciera* as only a two-step test in determining whether a jury right attaches. *Id.* (citing *Pereira v. Farace*, 413 F.3d 303, 337 (2d Cir. 2005)). In any event, this third step appears to be merely another way of asking whether the claims at issue are necessarily resolved during the process of allowing or disallowing the proof of claim against the estate, which this court already answered in the previous section. *See, e.g.*, *In re Renewable Energy Dev. Corp.*, 792 F.3d 1274, 1279 (10th Cir. 2015); *Carpenters Pension Fund for N. Cal. v. Moxley*, 734 F.3d 864, 868 (9th Cir. 2013); *White v. Kubotek Corp.*, 487 B.R. 1, 10 (D. Mass. 2012). Accordingly, even if this third step still applies, the court would conclude that the Trustee's claims implicate private, and not public, rights for the reasons discussed in section III.A., *supra*.

*Granfinanciera*, 492 U.S. at 43 (money had and received); *Ross v. Bernhard*, 396 U.S. 531, 533 (1970) (conversion).

As to the second step—again, the more important one—the Trustee specifically alleges that Defendant is liable for "damages" in Counts V (breach of contract), VI (breach of fiduciary duty), VII (conversion), VIII (breach of express and implied trust), IX (breach of constructive trust), and X (unjust enrichment); and in Count XI (money had and received), the Trustee alleges Defendant owes the bankruptcy estate "at least $1,356,000.00 for money had and received." (Adversary Proceeding, Compl. ¶¶ 76, 79, 86, 90, 94, 97, 99.) "[M]oney damages are, of course, the classic form of *legal* relief." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Martens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)). Contrary to the Trustee's assertion, a claim for a "determinate sum of money" suggests legal, not equitable, relief to which a jury trial right applies. *See Granfinanciera*, 492 U.S. at 46-47; *see also Weiss v. Lockwood*, 499 B.R. 392, 394 (D. Mass. 2013). The Trustee has not, for example, limited the relief sought to restitution of particular funds presently held by Defendant and belonging to the bankruptcy estate but, instead, merely seeks to impose personal liability for money damages. *See Great-West Life*, 534 U.S. at 213-16 (explaining the differences between restitution in equity, which is limited to restoration to the plaintiff of particular funds or property in the defendant's possession, and restitution at law, which seeks to impose personal liability on the defendant to pay a sum of money); *see also In re Envtl. Career Org.*, 2013 WL 936501, at *3 (D. Mass. Mar. 11, 2013).

On balance, therefore, the majority of the Trustee's claims carry a right to a jury trial. The remaining claims (Counts I through IV), to the extent they are viable as independent claims,[10]

---

[10] As to Count I, the Supreme Court has explained that in order to obtain the remedy of equitable accounting, an adequate remedy at law must be unavailable and "the plaintiff must be able to show that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them," which is a heavy burden since juries "under proper instructions" often will be able to "readily determine the recovery." *Dairy Queen*, 369 U.S. at 478-79; *see also Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 964-66 (10th Cir. 2009); *Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 80-81 (1st Cir. 2008). As to the claims seeking declaratory relief (Counts II through

involve facts common to the claims that must be decided by a jury. Accordingly, any purely

equitable claims remaining could only be decided by the court after the jury makes its findings. *See*

*Dairy Queen, Inc.*, 369 U.S. at 479. As Defendant is entitled to a jury trial on at least some of the

claims brought by the Trustee, the court finds adequate cause under 28 U.S.C. § 157(d) to withdraw

the reference to the Bankruptcy Court as to the entire Adversary Proceeding. *Cf. Ross*, 396 U.S. at

542-43; *Dairy Queen, Inc.*, 369 U.S. at 473 n.8.


IV.   CONCLUSION

For these reasons, the court ALLOWS Defendant's renewed motion to withdraw the

reference to the Bankruptcy Court. (Dkt. No. 1.)

It is So Ordered.


_/s/ Mark G. Mastroianni_
MARK G. MASTROIANNI
United States District Judge

---

IV), the First Circuit has explained that "'declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act.'" *Brown v. Rhode Island*, 511 F. App'x 4, 6 (1st Cir. 2013) (quoting *Ysais v. New Mexico*, 373 F. App'x 863, 866 (10th Cir. 2010)). The court need not determine the viability of these claims at this time, however, since it is unnecessary to do so in resolving the motion to withdraw and neither party has raised the issue.